# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | | |
|---|---|---|
| Brandon Nix, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 6:20-cv-01007-LSC |
| | ) | |
| Shane Mason et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF OPINION

Brandon Nix ("Nix") brings this 42 U.S.C. § 1983 action against Trooper Lee Mobley ("Trooper Mobley"), alleging that Trooper Mobley violated the Fourth Amendment by using excessive force while arresting him.[1] For the following reasons, Nix cannot prevail on his claim. Accordingly, Mobley's Motion for Summary Judgment is due to be granted.

## I.     Background[2]

---

[1] All claims against Deputy Mason have already been dismissed. (*See* doc. 40.) Troopers Lewis and Mobley filed a joint motion for summary judgment. (Doc. 33.) In his response brief, the Plaintiff "agree[d] to the dismissal of defendant Lewis." (Doc. 36 at 3.) Accordingly, the claims against Trooper Lewis will be dismissed. This opinion, therefore, only addresses the merits of the claim against Trooper Mobley.

[2] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994). The Court is not required to identify unreferenced evidence supporting a party's

Viewed in the light most favorable to the plaintiff, the facts are as follows. Trooper Charles Lewis ("Trooper Lewis") stopped Nix on Highway 253, adjacent to a culvert. (Doc. 33 at 3 & 6.) After learning that Nix had an outstanding felony warrant for escape with the Marion County Sheriff's Office, Trooper Lewis confirmed via radio that Deputy Shane Mason ("Deputy Mason") would arrive to arrest Nix. (*Id.* at 4.) Trooper Mobley arrived shortly thereafter to assist Trooper Lewis. (*Id.*) Trooper Lewis handcuffed Nix and explained that Deputy Mason would arrive to serve the outstanding warrant. (*Id.*) Trooper Mobley placed Nix in the back of Trooper Lewis' car (*Id.*)

While Trooper Lewis discussed the charges with Trooper Mobley, Nix yelled, "Do you want to get ugly because we can?!" (*Id.*) A loud banging noise from the back of Trooper Lewis' car followed. (*Id.*) Trooper Lewis told Nix, "Please don't do that again." (*Id.*) A minute later, Nix yelled, "I'll fight you tooth and nail with handcuffs on!" (*Id.* at 5.) Complaining of chest pain, Nix requested an ambulance. (*Id.*) Immediately after Trooper Lewis radioed to dispatch for the ambulance, Deputy Mason arrived. (*Id.*) Trooper Lewis then asked the ambulance to wait because he thought Deputy Mason would end up transporting Nix to the hospital himself. (*Id.*)

position. As such, review is limited to exhibits and specific portions of the exhibits specifically cited by the parties. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("[D]istrict court judges are not required to ferret out delectable facts buried in a massive record . . .").

Trooper Lewis informed Deputy Mason of Nix's complaints of chest pain and of his desire to go to the hospital. (*Id.*) Trooper Lewis then said, "Let's get him out. I'm sure he's gonna fight because he's already tried to fight Mobley." (*Id.*) Trooper Mobley attempted to transfer Nix from the rear of Trooper Lewis' car, but Nix would not move, asking where his ambulance was. (*Id.*) Trooper Lewis and Deputy Mason explained that Mason would take Nix to the hospital, which would be faster than waiting for the arrival of the ambulance (*Id.* at 5–6.) Nix then shouted to Veronica, his girlfriend, that Trooper Lewis and Deputy Mason would not call him an ambulance (*Id.* at 6.)

Mason then instructed Nix to get out of the vehicle. (*Id.*) As Trooper Mobley helped Nix out, he told Nix to "stop resisting." (*Id.*) Nix told Trooper Mobley that he was "not resisting," but that they were "refusing [Nix] a [sic] ambulance." (*Id.*) Without telling Nix what they were going to do (Doc. 36 at 6), Trooper Mobley held Nix's shirt as Deputy Mason held Nix's left arm to guide him away from the culvert next to the vehicle and into Deputy Mason's vehicle. (Doc. 33 at 6.) They then moved Nix against Trooper Mobley's vehicle to exchange Trooper Lewis' handcuffs for Deputy Mason's handcuffs. (*Id.*) As Trooper Mobley and Deputy Mason guided Nix up against Trooper Lewis' vehicle, Nix raised the elbow of his left arm, pulling it away from Deputy Mason. (*Id.* at 7.) This movement caused Trooper Mobley and

Deputy Mason to struggle holding Nix as they swapped the handcuffs. (*Id.*) As Trooper Mobley and Deputy Mason struggled to hold Nix, Trooper Mobley observed Nix tense up and push back, and claims he thought that Nix would "headbutt" Deputy Mason in the face with the back of his head. (*Id.*) At the same time, Trooper Lewis saw Nix pushing off the patrol vehicle and raising up, which concerned Lewis since he believed it might lead Trooper Mobley, Deputy Mason, and Nix to fall into the culvert. (*Id.*) Nix, who had Deputy Mason's handcuff on one hand and Trooper Lewis' handcuff on the other, continued pushing off the car as Deputy Mason tried securing Nix's hands together. (*Id.*)

Trooper Mobley used an upper body restraint by bringing his elbow over Nix's shoulder and his forearm around Nix's upper body. (*Id.*) The video footage from Trooper Lewis' body camera shows that contrary to Nix's claim, Trooper Mobley did not apply a rear-naked chokehold nor did his restraint apply any pressure to Nix's carotid artery (Lewis Body Cam 41:59-42:04; *see also* Doc. 36 at 5, 6–8.)[3] While Trooper Mobley was in position to potentially apply pressure to Nix's carotid artery by using the rear-naked chokehold, video footage from the officer's body camera shows that Trooper Mobley's elbow—clearly away from Nix's head and neck area—

---

[3] "Where video evidence is conclusive, witness testimony cannot be used to introduce a factual dispute." *Charles v. Johnson*, 18 F.4th 686, 692 n.1 (11th Cir. 2021).

was not in the necessary position to apply pressure to the carotid artery. (Lewis Body Cam 41:59-42:04). The restraint brought Nix to the ground. (Doc. 33 at 9.) Trooper Mobley then repositioned himself over Nix to ensure he did not have the entirety of his weight on Nix. (*Id.*) Simultaneously, Trooper Lewis held Trooper Mobley to ensure Mobley's weight was not upon Nix. (*Id.*) Nix appeared to become unconscious after Trooper Mobley applied the restraint. (Doc. 36 at 5.) With Nix on the ground, Deputy Mason swapped the handcuffs with Trooper Lewis' assistance. (Doc. 33 at 10.) Nix then regained consciousness, and Deputy Mason and Trooper Mobley helped Nix roll to his side. (*Id.* at 11.) After Nix got up, he walked unassisted to Deputy Mason's car with his hands cuffed. (*Id.*)

## II.    Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). A genuine dispute as to a material fact exists "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Waddell v.*

*Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001)). The trial judge should not weigh the evidence, but should determine whether there are any genuine issues of fact that should be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by "view[ing] the materials presented and all factual inferences in the light most favorable to the nonmoving party." *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1213–14 (11th Cir. 2015) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). Conclusory allegations and "mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016) (per curiam) (quoting *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004)). In a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013). Although the trial courts must use caution when granting motions for

summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## III.   Analysis

Qualified immunity shields officials from civil liability "so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (cleaned up). Qualified immunity "balances two important interests––the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Qualified immunity involves a two-prong inquiry. *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008). First, the official must establish that he was acting within the scope of his discretionary authority. *Case*, 555 F.3d at 1325. Then, the burden shifts to the plaintiff to overcome the defense of qualified immunity, which involves analyzing whether the officer's conduct violated a clearly established constitutional right in the specific context of the case. *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012) (quoting *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011)).

Here, Trooper Mobley acted within the scope of his discretionary authority when he—on duty as an officer assisting an arrest—employed an upper body restraint to bring Nix to the ground. *See Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) (quoting *Rich*, 841 F.2d at 1564) ("We thus interpreted the term 'discretionary authority' to include all actions of a governmental official that (1) 'were undertaken pursuant to the performance of his duties,' and (2) were 'within the scope of his authority.'"); *see also Hinson v. Bias*, 927 F.3d 1103, 1116 (11th Cir. 2019) (finding that the officers acted in their discretionary duty by undertaking the challenged actions while on duty as police officers conducting arrest and investigative functions). Because Trooper Mobley acted within the scope of his discretionary authority, Nix must show that Trooper Mobley violated a clearly established constitutional right.

### A.   Excessive Force

The Fourth Amendment guarantees citizens the right "to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. Police officers may not use excessive force; however, "some force in effecting an arrest is . . . allowed." *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002). Excessive force cases are governed by the Fourth Amendment's "objective reasonableness" standard. *See Brosseau v. Haugen*, 543 U.S. 194, 197 (2004).

Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a "careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)). This inquiry requires careful attention to the facts and circumstances of each case. *Id.* However, the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene rather than the clear lens of hindsight. *Id.* The Supreme Court has noted several factors that courts must pay careful attention to, such as the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.* The Eleventh Circuit has provided additional factors to consider, including "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted, and (4) whether the force was applied in good faith or maliciously and sadistically." *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008) (citing *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000)).

In *Charles v. Johnson,* an officer learned that the plaintiff had an outstanding warrant, so he asked the plaintiff to step outside the car. *Charles*, 18 F.4th 686, 691

(11th Cir. 2021). The plaintiff refused to comply with the officer's directives. *Id.* When the plaintiff continued to ignore the officer's commands, the officer tackled the plaintiff. *Id.* at 692–93. The district court found that qualified immunity barred the plaintiff's suit, and the Eleventh Circuit affirmed. *Id.* at 691. The Eleventh Circuit first reasoned that the tackle was not a categorically unconstitutional kind of force. *Id.* at 699. The Court then found that the tackle did not amount to excessive force. *Id.* at 699–700. Even though the *Graham* factors did "not point unwaveringly in [the officer's] favor"—the plaintiff never attempted to flee the scene and did not direct any violent behavior towards the officer, the officer's force was not deemed excessive since the plaintiff's pre-tackle behavior "constituted active resistance and a sure attempt to resist arrest." *Id.* at 700. The plaintiff also had an outstanding warrant, so regardless of the seriousness of the underlying offense, the officer could use reasonable force to effectuate the arrest. *Id.* Finally, the fact that the plaintiff ignored the officer's requests and continued struggling with the officer as the officer tried to pull the plaintiff's hands behind his back showed that the officer had no choice but to immobilize the plaintiff by using an increased level of force. *Id.* Therefore, the officer did not violate the plaintiff's Fourth Amendment rights and received qualified immunity. *Id.*; *see also Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) (finding that the defendant did not use excessive force on a plaintiff who

was bitten by a police canine thirty-one times because the defendant had been suspected of committing multiple armed robberies and actively fled the police).

Notwithstanding, a gratuitous use of force when a criminal suspect is not resisting constitutes excessive force. *Hadley*, 526 F.3d at 1330. In *Hadley*, the Eleventh Circuit found that an officer's punching of the plaintiff constituted excessive force as the plaintiff was handcuffed and not struggling or resisting. *Id.* Moreover, the plaintiff did not pose a danger sufficient enough to warrant a blow to the stomach. *Id.*; *see also Galvez v. Bruce*, 552 F.3d 1238, 1242–43 (11th Cir. 2008) (finding that the defendant police officer used excessive force when he slammed the plaintiff into a concrete structure when he was suspected of committing a misdemeanor, was handcuffed, and offered no physical resistance).

Trooper Mobley is entitled to qualified immunity since he did not apply excessive force. First, the severity of the crime militates in favor of Trooper Mobley. Nix had an outstanding felony warrant for escape. Thus, Trooper Mobley, like the officer in *Charles* who enjoyed qualified immunity, is entitled to use a reasonable amount of force to effectuate the arrest.

The second *Graham* factor, which analyzes the officer's immediate threat to safety, also favors Trooper Mobley. Even though Nix claims that he did not attempt to headbutt anyone while Trooper Mobley and Trooper Lewis tried to handcuff him,

other factors during the encounter entail that the officers experienced a threat to their safety. First, Nix's active resistance while they tried to fasten the handcuffs made Trooper Lewis concerned that Trooper Mobley, Deputy Mason, and Nix would all fall into the culvert right next to the police car. Moreover, Trooper Mobley's concern that Nix would headbutt Deputy Mason in the face when he observed Nix tense up and push back is reasonable considering Nix's actions leading up the struggle, such as Nix yelling, "Do you want to get ugly because we can?" and "I'll fight you tooth and nail with handcuffs on!" to Trooper Lewis. Therefore, Trooper Mobley was reasonable in believing that Nix posed an immediate threat to his safety.

The third *Graham* factor also supports Trooper Mobley. Like the plaintiff in *Charles*, Nix actively resisted arrest. Nix ignored requests from the officers—again he verbally threatened Trooper Mobley and Trooper Lewis by screaming "I'll fight you tooth and nail with handcuffs on"—even after Trooper Lewis told him to stop. When Deputy Mason arrived and Trooper Mobley opened the car door to allow Nix out, Nix refused to comply, remained seated, continued to ask where his ambulance was, and yelled that he was being refused an ambulance after he was told that Deputy Mason would take him to the hospital.

Nix continued to resist after he finally exited Trooper Lewis' car. As Trooper Mobley and Trooper Lewis attempted to exchange Nix's handcuffs, Nix constantly shifted, forcing Trooper Mobley and Deputy Mason to struggle to remove the handcuffs. Furthermore, Nix also tensed up and attempted to push back against the police car, which made Trooper Mobley believe Nix would headbutt Deputy Mason or that all three of them would fall into the ditch. Nix's actions are dissimilar to those of the *Hadley* plaintiff, who did not resist as the police officers applied handcuffs. Instead, Nix's actions resemble the plaintiff's actions in *Charles*, who continued to struggle and resist arrest by attempting to pull away from the officer. Since Nix actively resisted arrest, both verbally in threatening Trooper Mobley and physically during the handcuff exchange, Trooper Mobley could use reasonable force to effectuate the arrest.

Likewise, the four factors from the Eleventh Circuit favor Mobley. Because Nix actively resisted arrest and failed to comply with the officer's requests even after being told that they would take him to the hospital, Trooper Mobley was reasonable in using the restraint to stop Nix from resisting any further. Moreover, as seen in the video footage from the officer's body cam, Trooper Mobley only applied the restraint for the amount of time needed to exchange the handcuffs, and the restraint was not a rear naked chokehold—as evidenced by the fact that Officer Mobley's

elbow was visibly away from Nix's neck. Additionally, once he applied the restraint, he repositioned himself to ensure that his body weight was not compressing Nix, and Trooper Lewis continued pulling on Trooper Mobley's belt to further ensure that Nix did not carry Trooper Mobley's entire body weight on his back. In addition, the fact that he and Trooper Lewis ensured that his entire weight did not rest on Nix's body showed that they applied the force in good faith to effectuate the arrest.

Consequently, given the foregoing considerations, Nix did not suffer a violation of his constitutional rights.

## B.    Clearly Established Right

Even if Mobley did apply excessive force, he did not violate a clearly established right. A right is clearly established for qualified immunity purposes when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Johnson v. City of Miami Beach*, 18 F.4th 1267, 1273 (11th Cir. 2021) (quoting *Mullenix*, 577 U.S. at 7). The usual way of "establishing that a constitutional violation [is] clearly established law is by pointing to a case, in existence at the time, in which the Supreme Court or [the Eleventh Circuit] found a violation based on materially similar facts." *Id.* (quoting *Cantu v. City of Dothan*, 974 F.3d 1217, 1232 (11th Cir. 2020)). "In the context of Fourth Amendment excessive force claims, we have noted that generally no bright line exists

for identifying when force is excessive; we have therefore concluded that unless a controlling and materially similar case declares the official's conduct unconstitutional, a defendant is usually entitled to qualified immunity." *Id.* (quoting *Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000)).

Eleventh Circuit case law has clearly established that an officer violates the Fourth Amendment's protection against excessive force when he uses gratuitous force against an arrestee who is fully secured, not resisting arrest, and not posing a safety threat to an officer. *Id.* Here, Nix failed to highlight any cases clearly establishing that Mobley's actions violated the Fourth Amendment. Nix cites *Johnson v. City of Miami* in which the Eleventh Circuit found that a reasonable officer would be on fair notice that it was unlawful to strike the plaintiff after his arrest was complete, he was fully secured inside a holding cell, and he was not resisting or attempting to flee. *Id.* at 1274–75. None of these factors are present here. Nix was never fully secured until Trooper Mobley applied the restraint. Moreover, his physical resistance continued even as Mobley, Lewis, and Nix himself were near enough to a culvert to potentially fall in. Therefore, Nix cannot point to an Eleventh Circuit or Supreme Court case that indicates Mobley violated a clearly established right.

## IV.   Conclusion

For the foregoing reasons, the Defendants' Motion for Summary Judgment is due to be granted. The Court will enter an Order consistent with this Memorandum of Opinion.

**DONE** and **ORDERED** on January 6, 2023.

_____
L. Scott Coogler
United States District Judge

211211